JAMMY M. KIGGUNDU (State Bar No. 24050874) (Federal Bar No. 630591)
E-Mail: jammy@dkcounsel.com
**DOUGLASS & KIGGUNDU, PLLC**
1811 Bering Dr., Suite 420
Houston, Texas 77057
Telephone: (713) 609-7704
Facsimile: (713) 227-7497

Attorney acting as local counsel for Westside Surgical Hospital

DEVIN M. SENELICK, SBN 221478 *(pro hac vice forthcoming)*
E-Mail:  dsenelick@health-law.com
BRIDGET A. GORDON, SBN 287098 *(pro hac vice forthcoming)*
E-Mail:  bgordon@health-law.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
Telephone: (310) 551-8111
Facsimile: (310) 551-8181

Attorneys for Westside Surgical Hospital

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| WESTSIDE SURGICAL HOSPITAL, a Texas Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>THE EMBASSY OF THE STATE OF KUWAIT; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1) BREACH OF CONTRACT**<br>**2) BREACH OF CONTRACT – IMPLIED-IN-FACT AGREEMENTS**<br>**3) BREACH OF IMPLIED-IN-LAW CONTRACT / UNJUST ENRICHMENT**<br>**4) QUANTUM MERUIT**<br>**5) PROMISSORY ESTOPPEL** |

Plaintiff Westside Surgical Hospital ("Westside Surgical") brings this Complaint against the Embassy of the State of Kuwait ("Embassy") on the following grounds:

1. Westside Surgical brings this lawsuit for breach of contract and other claims under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1391(f), and 1602-11. Westside Surgical seeks to enforce a series of agreements (the "Agreements") between Westside Surgical and the Embassy (collectively, the "Parties"). Pursuant to the Agreements, Westside Surgical provided medically necessary healthcare services to Kuwaiti citizens while they were present in the United States. In return, the Embassy agreed to pay Westside Surgical a certain discounted amount of Westside Surgical's billed charges. However, the Embassy has failed to make those payments.

2. Westside Surgical has made repeated attempts to obtain payment from the Embassy, including but not limited to multiple collection telephone calls to the Embassy by its designated billing and collections team, multiple collection and demand letters addressed to the director's of the Embassy's Health Division responsible for claim processing, calls and communications with the medical director and the program director of the Embassy's Health Division and their designees alongside attempts to engage the Embassy's Health Division through an agent familiar with the Embassy and their claims department, to obtain proper payment for these healthcare services, but to no avail. The Embassy has ceased paying for any of Westside Surgical's bills. Accordingly, Westside Surgical seeks damages and interest for the unpaid amounts.

## PARTIES

3. Westside Surgical, located in Houston, Texas, is a multi-specialty surgical hospital created to serve all people, through exemplary healthcare, education and community service, with 12 overnight beds and six operating rooms,

equipped to perform a wide range of inpatient and outpatient procedures, specializing in breast, orthopedic and spine surgery, among a wide range of surgical and diagnostic offerings.

4. Westside Surgical annually performs more than 4,500 procedures.

5. Westside Surgical is informed and believes that Defendant the Embassy is the diplomatic mission of the State of Kuwait to the United States. Westside Surgical is informed and believes that the State of Kuwait has provided free universal healthcare to its citizens since 1950, and routinely arranges and pays for the healthcare services its citizens require in other countries, including the United States, and specifically at Westside Surgical. The Health Division of the Embassy, located in Washington, D.C., acts as a *de facto* health benefits administrator to Kuwaiti nationals who require services in the United States. The Embassy's Health Division engages in activities similar to any other health insurance provider, which includes arranging and paying for medical services. The Embassy is a "foreign state" under the FSIA. 28 U.S.C. § 1603(a).

## JURISDICTION

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a). The Embassy is not immune from jurisdiction because, *inter alia*: (1) it has waived immunity (28 U.S.C. § 1605(a)(1)); and (2) this action is "based upon a commercial activity carried on in the United States by a foreign state" (28 U.S.C. § 1605(a)(2)).

## VENUE

7. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(f)(1) because it is where a substantial part of the events and omissions giving rise to the claims alleged in the Complaint occurred.

## NATURE OF THE DISPUTE

8. For four years, the Embassy has periodically negotiated and entered into Agreements with Westside Surgical to provide healthcare services at its facility

in Houston, Texas, to Kuwaiti nationals. The Embassy agreed to pay to Westside Surgical for these services at a certain discounted amount of Westside Surgical's billed charges.

9. This action arises out of a series of Agreements covering a number of the Embassy's patients who received health care services from Westside Surgical at the Embassy's request. Despite the fact that Westside Surgical provided medically necessary health care services to Kuwaiti nationals at the Embassy's request, and for which the Embassy agreed to be financially responsible, the Embassy has failed to provide proper payments for these services.

10. Westside Surgical provided services to the patients under the Agreements, which were in writing. The Agreements contained a standardized set of terms, and included a heading with specific information regarding the patient at issue, such as name, date of birth, covered treatment, and covered period. The "Covered Period" was set for a certain length of time. However, subsequent extensions of the Agreements were often entered into for the same patient to extend the length of time during which treatment for the patient would be covered by the Embassy.

11. Westside Surgical and its counsel sent letters demanding immediate payment of the outstanding amounts. The Embassy never responded to the requests for payment outlined in these letters.

12. Westside Surgical has provided the Embassy with a spreadsheet containing the details of all outstanding bills.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

13. Westside Surgical incorporates each of the paragraphs above as though fully set forth herein.

14. The Agreements are valid and binding contracts between Westside Surgical and the Embassy for the provision of healthcare services Westside Surgical

in return for payment by the Embassy.

15. Westside Surgical performed its obligations under the Agreements, except as excused by the Embassy's conduct.

16. The Embassy materially breached the Agreements by failing to pay Westside Surgical in accordance with the terms set forth in the Agreements.

17. Westside Surgical has been and continues to be injured as a result of the Embassy's breach.

18. As a direct and proximate result of the Embassy's breaches of the Agreements, Westside Surgical has suffered damages in an amount to be proven at trial, plus interest at the maximum contractual and/or statutory rate, according to proof.

## SECOND CAUSE OF ACTION

### (Breach of Contract – Implied-In-Fact Agreements)

19. Westside Surgical incorporates each of the paragraphs above as though fully set forth herein.

20. In the alternative, if for any reason the Agreements do not apply or are unenforceable, the services provided by Westside Surgical were valuable to the Embassy since these services conferred a benefit to the patients at the Embassy's request.

21. Based on the Parties' longstanding course of conduct, the Embassy was on notice and knew Westside Surgical expected the Embassy to pay Westside Surgical for the services provided.

22. Westside Surgical materially performed its obligations under the implied-in-fact agreements, including providing healthcare services to the Embassy's patients, except as excused by the Embassy's conduct.

23. The Embassy materially breached the Implied-In-Fact Agreements by failing to pay Westside Surgical for the healthcare services provided.

24. As a direct and proximate result of the Embassy's breaches of the Implied-In-Fact Agreements, Westside Surgical has suffered damages in an amount to be proven at trial, plus interest at the maximum rate, according to proof.

### THIRD CAUSE OF ACTION

### (Breach of Implied-in-Law Contract / Unjust Enrichment)

25. Westside Surgical incorporates each of the paragraphs above as though fully set forth herein.

26. In the alternative, if for any reason the Agreements do not apply or are unenforceable, the services provided by Westside Surgical were valuable to the Embassy since these services conferred a benefit to the patients at the Embassy's request.

27. In providing services to Kuwaiti patients, Westside Surgical conferred a valuable benefit to those patients and thereby to the Embassy, which requested the services on behalf of its citizens.

28. Based on the Parties' longstanding course of conduct and based on Westside Surgical efforts to notify the Embassy of the outstanding claims, the Embassy was on notice and knew that Westside Surgical expected the Embassy to pay Westside Surgical for the healthcare services provided.

29. In failing to pay for the healthcare services, the Embassy retained a benefit for which it has not paid. It would be inequitable for the Embassy to receive the benefit of the services it requested on behalf of Kuwaiti nationals without paying for the full value of those services.

30. The Embassy has been unjustly enriched at Westside Surgical's expense. As a result, the Embassy now owes Westside Surgical the full value of its services, in an amount to be proven at trial for the services, plus interest at the maximum legal rate, according to proof.

## FOURTH CAUSE OF ACTION

### (Quantum Meruit)

31. Westside Surgical incorporates each of the paragraphs above as though fully set forth herein.

32. The services provided by Westside Surgical to the Kuwaiti citizens referenced above were valuable to the Embassy since these services conferred a benefit to the patients at the Embassy's request.

33. Based on the Parties' longstanding course of conduct, the Embassy was on notice and knew that Westside Surgical expected the Embassy to pay for the healthcare services provided to the Embassy's patients.

34. The services conferred a benefit upon the Embassy which it accepted in the discharge of its obligation to arrange and pay for healthcare services required by Kuwaiti citizens.

35. Westside Surgical has been and continues to be damaged in an amount to be proven at trial for the healthcare services to the Kuwaiti citizens described above. Additional damages continue to accrue daily.

36. The Embassy cannot justify its retention of the benefit conferred upon it without compensating Westside Surgical.

37. As a result, the Embassy now owes Westside Surgical an amount to be proven at trial, plus interest at the maximum legal rate, according to proof.

## FIFTH CAUSE OF ACTION

### (Promissory Estoppel)

38. Westside Surgical incorporates each of the paragraphs above as though fully set forth herein.

39. The Embassy promised to pay Westside Surgical for its services rendered to Kuwaiti citizens.

40. The Embassy should have reasonably expected its promises would induce Westside Surgical to provide services to the patients identified above.

41. In reliance upon the promises from the Embassy, Westside Surgical was induced to and did provide healthcare services to its detriment since it has not been paid for these services.

42. Injustice can only be avoided by enforcing the Embassy's promises to pay for the healthcare services at Westside Surgical 's billed charges in an amount to be proven at trial, plus interest at the maximum legal rate, according to proof.

WHEREFORE, Westside Surgical prays for relief as follows:

1. Judgment in an amount to be proven at trial, plus interest at the maximum rate, according to proof;

2. Attorneys' fees and costs to the extent allowable by law; and

3. Such other relief as may be just and proper.

Dated: July 6, 2018          **DOUGLASS & KIGGUNDU, PLLC**

By:       / s / Jammy M. Kiggundu
JAMMY M. KIGGUNDU
1811 Bering Dr., Suite 420
Houston, Texas 77057
713-609-7704
713-227-7497 (facsimile)
jammy@dkcounsel.com
Attorneys for Westside Surgical Hospital